GEISENDORFF ET UX. *v.* EAGLES ET AL.

REPLEVIN.—*Statute of Frauds*—*Sale of Chattel, without Delivery, Presumed Fraudulent against Creditors.*—*Weight of Evidence.*—*Supreme Court.*— *Husband and Wife*—In an action by a married woman, against her husband's execution creditors and the officer holding the executions, to replevy certain personal property levied upon under such executions, there was evidence that, prior to the time the executions came into the

officer's hands, the husband had been the owner and in possession of the personal property, and had sold it to his wife in good faith and for a valuable consideration, but without delivering possession thereof to her.

*Held*, that, as such a sale is, by section 8 of the statute of frauds, 1 R. S. 1876, p. 505, presumptively fraudulent, as against the husband's creditors, the Supreme Court will not disturb a finding for the defendants.

SAME.—*Evidence.*—*Chattel Mortgage.*—The introduction in evidence, by the defendants, in such case, of chattel mortgages executed by the plaintiff and her husband, on such property, after such sale to her, to secure payment of the husband's debts, would tend to show such sale to have been *bona fide*, and not fraudulent.

SAME—*Levy of Execution on Mortgaged Chattel.*—*Equity of Redemption.*—*Measure of Damages*—*Excessive Damages.*—The evidence on the trial of such action established that such chattel mortgages were prior liens to the executions in the hands of the officer, that the property had been sold by the plaintiff, after being replevied, and that its value was less than the amount of the debts secured by such mortgages; but the finding of the court was for the defendants, for the full value of the property.

*Held*, that, as the equity of redemption of such property was all that could have been levied upon and sold, and as that was valueless, the damages assessed should have been only nominal.

From the Noble Circuit Court.

*S. Claypool, H. C. Newcomb* and *W. A. Ketcham*, for appellants.

*A. A. Chapin, B. Harrison, C. C. Hines* and *W. H. H. Miller*, for appellees.

HOWK, C. J.—This was a suit by the appellant Sarah H. Geisendorff, against the appellees, to recover the possession of certain personal property, and damages for the unlawful detention thereof. In her complaint, the appellant alleged, in substance, that she was the owner and entitled to the possession of the ice contained in the three ice-houses situated farthest north, built and owned by Jacob C. Geisendorff and situated on the banks of the reservoir at Rome City, Noble county, Indiana, which said ice, as she was informed and believed, was of the value of seven thousand dollars, and had been unlawfully taken by the appellee Nathaniel P. Eagles, sheriff of said county, and was then

unlawfully held by him, by virtue of two executions issued out of the Marion Superior Court in two suits, wherein the appellees John C. Hall and Mary Haughton were severally plaintiffs, and in both of which the appellant Jacob C. Geisendorff was defendant; and the said Sarah H. Geisendorff alleged, that said property had not been taken for any tax, assessment or fine pursuant to statute, or seized under an execution or attachment against her property. Wherefore, etc.

This complaint was verified by the oath of the appellants' agent; and, an undertaking having been filed, the property described in the complaint was surrendered to the appellants, the plaintiffs below.

Each of the appellees answered the appellants' complaint, by a general denial thereof. The issues joined were tried by the court without a jury, and a finding was made for the appellees. The appellants' motion for a new trial was overruled, and to this ruling they excepted; and the court rendered judgment against the appellants, upon and in accordance with its finding.

In this court, the appellants jointly assigned, as error, the decision of the court below in overruling their joint motion for a new trial; and the appellant Jacob C. Geisendorff separately assigned, as error, the judgment of the court below, against him, for the value of the property in controversy.

In their motion for a new trial, the appellants jointly assigned the following causes therefor:

1. That the finding of the court was not sustained by sufficient evidence;

2. That the finding of the court was contrary to law;

3. That the damages were excessive:

4. Error in the assessment of the amount of recovery, in this, that the amount was too large.

This suit was commenced on the 21st day of July, 1876. Before that time, on the 9th day of February, 1876, it was claimed by the appellant. Sarah H. Geisendorff, that her husband, Jacob C. Geisendorff, had sold and delivered to her the ice in controversy in this action, for a full and valuable consideration, subject, however, to a certain chattel mortgage thereon, executed by him to Andrews, Bissell & Co., of Cincinnati, Ohio. The evidence on the trial clearly showed, we think, that, on the day last named, the said Jacob C. Geisendorff did sell such ice to his wife, the said Sarah H. Geisendorff, for its fair value, in payment of a debt then justly due and owing by him to her. This sale was made some time before the appellees, or either of them, acquired any interest in or lien upon such ice. It was clearly shown, however, that, after this sale of the property in question, there was no visible change in the possession thereof.

In section 8 of "An act for the prevention of frauds and perjuries," etc., approved June 9th, 1852, it is provided, as follows: "Every sale made by a vendor of goods in his possession, or under his control, unless the same be accompanied by immediate delivery, and followed by an actual change of the possession of the things sold, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or subsequent purchasers in good faith, unless it shall be made to appear, that the same was made in good faith and without any intent to defraud such creditors or purchasers." 1 R. S. 1876, p. 505.

It will be seen from the provisions of this section, and under the facts of this case as above stated, that the sale of the ice in controversy to the appellant Sarah H. Geisendorff, by her husband, Jacob C. Geisendorff, was presumptively fraudulent and void, as against his creditors, two of whom were the appellees John C. Hall and Mary Haughton. To remove this presumption, it was necessary that

the appellants should have made it appear that the sale of
the ice to Mrs. Geisendorff was made in good faith and
without any intent to defraud her husband's creditors. On
this point we could not well disturb the finding of the
court; for the statutory presumption, that the sale was
fraudulent and void, would be sufficient to sustain the
finding, unless and until it was overcome by the weight
of positive evidence to the contrary. As this statutory
presumption tended to sustain the finding of the court, on
the point under consideration, and as this court can not and
will not weigh the evidence, it will be readily seen, we think,
that we can not disturb the finding of the court below upon
the point, that the sale of the ice in controversy to Mrs. Geis-
endorff by her husband, Jacob C. Geisendorff, was fraudu-
lent and void as against his creditors. *Rudolph* v. *Lane,*
57 Ind. 115; *Swales* v. *Southard,* 64 Ind. 557; and *The Ft.
Wayne, etc., R. R. Co.* v. *Husselman,* 65 Ind. 73.

The important and controlling questions in this case, as
it seems to us, arise under the second and third causes for
a new trial. Were the damages assessed against the ap-
pellants excessive? Did the court err in its assessment of
the amount of the appellees' recovery? In our opinion,
these questions ought to and must be answered in the
affirmative. The court was not requested by either of the
parties to make a special finding of the facts in this case;
and, therefore, the finding, although it contained a recital
of facts found, can only be regarded as a general finding.
*Nash* v. *Caywood,* 39 Ind. 437; *Conwell* v. *Clifford,* 45 Ind.
392; and *Caress* v. *Foster,* 62 Ind. 145.

As necessary to the proper presentation and understand-
ing of the questions under consideration, we will give the
substance of the facts found by the court, as recited in its
finding. After stating the finding for the defendants, the
appellees, the record proceeds as follows: "The court
further finds, that, at the commencement of this action,

the defendant Nathaniel P. Eagles was, and still is, the sheriff of Noble county, in the State of Indiana, and that, as such sheriff, he then had the lawful custody and possession of the property described in the complaint, to wit, all the ice in the three ice-houses furthest north, in a block of ice-houses in Rome City, in said Noble county, in the State of Indiana, by virtue of a levy made by him upon said ice, on the 10th day of July, 1876, to satisfy two executions, then in his hands as said sheriff, against the property of the plaintiff Jacob C. Geisendorff, issued by the clerk of the Superior Court of Marion county, in the State of Indiana, one of which executions was issued on the — day of June, 1876, upon a judgment duly rendered in favor of the defendant John C. Hall, against the said Jacob C. Geisendorff, by said Superior Court, on the 13th day of October, 1875, for the sum of thirty hundred and thirty-one $\frac{75}{100}$ dollars, and costs of suit, and upon which execution there is now due, including principal, interest and costs, the sum of three thousand six hundred and thirty dollars and thirty cents, exclusive of costs of the defendant Eagles, as sheriff, accrued upon said writ; that the other execution was duly issued by the clerk of said Superior Court, on the — day of June, 1876, upon a judgment duly rendered in favor of the defendant Mary Haughton, by said court, on the 10th day of November, 1875, for the sum of five hundred and eighty-three dollars and thirty-three cents, and costs of suit, and that there is now due upon the said execution, including principal, interest and costs, the sum of seven hundred dollars and seventeen cents, exclusive of costs of defendant Eagles, as sheriff, upon said writ. The court further finds, that the costs and expenses of said Eagles upon said writs, to which he is entitled, amount to the sum of thirty-one dollars and sixty cents, and that both of said judgments, upon which said writs were issued, bear interest at the rate of ten per cent. per

annum. And the court further finds, that at the date of making said levies upon said property, and at the time of commencement of this action, said executions were valid liens on said property, and that it was subject to levy and sale, as the property of said Jacob C. Geisendorff, to satisfy said executions and costs. The court further finds, that, by a writ of replevin issued in this cause, the property described in the complaint was, on the 22d day of July, 1876, taken from the possession of the defendant Eagles, and delivered to plaintiffs, and that its value, at the time it was replevied, was five thousand five hundred dollars, and the said Eagles ought to have return thereof, or the value thereof in case a return can not be had. And the defendants now move the court for judgment for the return of said property, or the value thereof in case a return can not be had; and the plaintiffs now admit in open court, that said property has been disposed of and can not be returned."

Upon this finding, the court rendered judgment in favor of the appellee Nathaniel P. Eagles, as such sheriff, for the full sum of five thousand five hundred dollars, and the costs of suit; and it was further adjudged that the payment to the appellees John C. Hall and Mary C. Haughton, of the amounts due on their respective judgments, of principal, interest and costs, and the costs of this action, would be a satisfaction of the judgment rendered in this action, and that, in default of such payment, and upon the collection of the judgment in this action, after the payment of the costs of this action and the amounts due said John C. Hall and Mary C. Haughton, on their respective judgments, the surplus, if any, should be paid to the clerk of the court for the appellants, the plaintiffs below, or whomsoever might by law be entitled thereto.

On the trial of this cause, the appellees gave in evidence three chattel mortgages on the ice in controversy, executed

by the appellants Jacob C. and Sarah H. Geisendorff, as follows :

1. One dated February 20th, 1876, to J. M. Ridenour, president of the Central Bank of Indianapolis, Indiana, to secure the payment of two promissory notes, particularly described, evidencing the indebtedness of said Jacob C. Geisendorff to said Central Bank, and amounting in the aggregate to the sum of four thousand eight hundred and eighty-six dollars and seventy-eight cents ;

2. One dated March 28th, 1876, to Frederick A. W. Davis, trustee, to secure the payment of the indebtedness of said Jacob C. Geisendorff, particularly described, to said F. A. W. Davis, amounting in the aggregate to the sum of three thousand dollars ; and,

3. One dated March 29th, 1876, to Frederick A. W. Davis, cashier of the Indiana Banking Company, to secure the payment of the note of said Jacob C. Geisendorff for six.hundred and ninety dollars, of even date with said mortgage, and payable sixty days after date to said Banking Company.

It will be readily seen, that the lien of each one of these chattel mortgages is older than the lien of the executions in favor of the appellees John C. Hall and Mary C. Haughton, on the property in controversy in this action. In section 436 of the practice act, it is provided that " Goods and chattels pledged, assigned or mortgaged as security for any debt or contract, may be levied upon and sold on execution against the person making the pledge, assignment or mortgage, subject thereto, and the purchaser shall be entitled to the possession, upon complying with the conditions of the pledge, assignment or mortgage." 2 R. S. 1876, p. 207.

Under the provisions of this section of the code, it is certain, we think, that the ice described in the com-

plaint of the appellant Sarah H. Geisendorff, upon the theory that the sale of such ice to her by her husband, Jacob C. Geisendorff, was fraudulent and void as against his creditors, was liable to levy and the sale thereof by the appellee Eagles, as sheriff of Noble county, under and by virtue of the executions in his hands in favor of the appellees John C. Hall and Mary C. Haughton, against the said Jacob C. Geisendorff, subject to the lien of the aforesaid mortgages thereon. In other words, it seems to us that, under this section of the practice act, the interest only of the mortgagor, the equity of redemption, in the chattels mortgaged, is liable to levy and sale on execution against the mortgagor. Where, as in this case, the evidence clearly shows that the personal property levied upon had been pledged, assigned or mortgaged by the execution defendant, in good faith, and for an amount equal to, or in excess of, its fair and reasonable value, before the execution became a lien thereon, it would seem to be clear that the value of the interest of the mortgagor, subject to levy and sale on an execution against him, in the property pledged, assigned or mortgaged, could not be greater or more than merely nominal. And if, in such case, the mortgaged property should be replevied out of the possession of the officer who has levied thereon, and if, thereafter, from any cause, a return of such property to such officer can not be had, it seems to us that the officer could not, and ought not to, recover aught more from the plaintiff in such replevin suit than the fair value of the interest of the execution defendant in such property.

In our view of this cause, the court clearly erred in its assessment of the amount of the appellees' recovery. Having ascertained, as it did, the value of the ice described in the appellants' complaint, we think the court should have then proceeded to enquire into and ascertain the value of the interest of the execution defendant in such

ice, at the time of the levy thereon ; and especially so, after it had been found that the sale of such ice to the appellant Sarah H. Geisendorff, by her husband, was fraudulent and void as against his creditors, and after it had been admitted in open court that return of such property to the appellee Eagles could not be made. From the appellees' own evidence, uncontradicted on this point, it was manifest that there were liens on the ice in controversy, under the above mentioned mortgages thereon, prior to the lien of the aforesaid executions, in the hands of said Eagles and in favor of the appellees Hall and Haughton, largely in excess of the value of said ice as found by the court. .It is apparent, we think, that the appellees did not give these mortgages in evidence, for the purpose of showing that the ice levied upon was encumbered with prior liens thereon for much more than its fair value, and that, in consequence thereof, the interest of the execution defendant in such ice, at the time of the levy, was of no possible value. Indeed, we may fairly suppose, that the only object and purpose of the appellees, in putting these mortgages in evidence, was to show that, after the alleged sale of said ice to Sarah H. Geisendorff by her husband, Jacob C. Geisendorff, he had exercised acts of ownership, inconsistent with such a sale, over the property in question, by giving mortgages thereon to his creditors to secure the payment of his own debts, for which his wife was in no way liable. It might well be doubted, if the mortgages offered in evidence by the appellees would have tended to establish such fact. But the tendency of this evidence was, we think, to show that Jacob C. Geisendorff regarded and treated his sale of the ice in controversy to his wife, Sarah H. Geisendorff, as a legal, valid and binding sale, and had, for this reason, procured her to join in the execution of the mortgages thereon.

Whatever may have been the object of the appellees in

putting. these mortgages in evidence, it seem to us the evidence clearly showed, that the interest of Jacob C. Geisendorff in the ice in controversy, at the time the executions against him became liens thereon, as claimed by the appellees, had no appreciable value. Therefore, it follows that the damages assessed by the court in this action were clearly excessive ; and for this cause the appellants' motion for a new trial ought to have been granted.

The judgment is reversed, at the appellees' costs, and the cause is remanded, with instructions to sustain the motion for a new trial, and for further proceedings in accordance with this opinion.

Opinion filed at November term, 1879.

Petition for a rehearing overruled at May term, 1880