# HIGGINS *v.* SPAHR ET AL.

[No. 17,406.    Filed May 5, 1896.    Rehearing denied May 27, 1896.]

FRAUDULENT CONVEYANCE.—*Sale by Husband to Wife.—Prima Facie Evidence.*—A *prima facie* case of fraud against creditors is made out, when it is shown that the vendor remained in full possession and management of a livery stable, after having given to his wife a bill of sale therefor.

SAME.—*Sale by Husband to Wife.—Possession.—Evidence.*—Where the continued possession and management, by the husband, of property sold to his wife, shows that the sale was *prima facie* fraudulent, the declarations of the husband, while in possession as agent of his wife, to the effect that the sale was made to defeat the claims of certain creditors, is admissible to show fraud.

From the Marion Circuit Court.    *Reversed.*

*T. J. Terhune*, and *W. A. Pickens*, for appellant.

*G. W. Spahr*, and *J. O. Spahr*, for appellees.

HOWARD, J.—This was an action, by the appellant, to recover judgment against the appellee, John H. Spahr, on a note given to appellant by said appellee, as part of the consideration for a half interest in a livery stable, owned by the parties at the time of said purchase.

The action also sought to set aside as fraudulent the subsequent sale and transfer of the livery stable by John H. Spahr to his wife and co-appellee, Sarah A. Spahr, and to subject the property so sold to the payment of any judgment that might be recovered by the appellant against John H. Spahr.

The court found for the appellant as against John H. Spahr; but found for the appellee, Sarah A. Spahr; thus, in effect, holding that she had purchased the livery stable from her husband in good faith and for a valuable consideration; that she had made the pur-

chase with her own separate means, being property received by her from her father's estate; and that in such purchase there was no fraud or collusion on her part.

Against the judgment in favor of Mrs. Spahr, this appeal is brought; the error assigned being the overruling of appellant's motion for a new trial.

The reasons urged in favor of a new trial were: (1) That the court erred in excluding, as against Sarah A. Spahr, proof of the statement of John H. Spahr, while he was in possession of the livery stable as agent of his wife, and after the sale to her, to the effect, that he had made said transfer to his wife "to beat Higgins" (meaning the appellant); (2) that the finding and decision were not sustained by sufficient evidence; and (3) that the finding and decision were contrary to law.

It was said in *Daniels* v. *McGinnis, Admr.*, 97 Ind. 549, that "as a general rule, the declarations of a grantor, made after he has parted with his title, are not admissible in evidence to impeach the title of any one claiming under him. *Campbell* v. *Coon*, 51 Ind. 76; *Garner* v. *Graves, Admr.*, 54 Ind. 188; *Burkholder* v. *Casad*, 47 Ind. 418. There are exceptions to this rule. One of the exceptions is, where the grantor and grantee conspire together to defraud third persons. In such case the statement of either is admissible against the other. *Caldwell* v. *Williams*, 1 Ind. 405; *Tedrowe* v. *Esher*, 56 Ind. 445; *Kennedy* v. *Divine*, 77 Ind. 490; Bump. Fraud. Conv. (2d ed.), 566."

In *Tedrowe* v. *Esher, supra*, Perkins, C. J., speaking for the court, said: "The fact that the grantor remains in possession is a circumstance tending to show fraud, but it does not of itself alone, establish a conspiracy or combination between the grantor and grantee to defraud, so as to let in, as evidence,

the declarations of the grantor, made after he has parted with his title, and in the absence of the grantee, impeaching the grantee's title. * * * As matter of practice in such a case as this, the court should not rule upon the admissibility of testimony such as was admitted and objected to in this case, till the other evidence in the case is in, that the court may make its ruling with knowledge whether a fraudulent combination is proved or not." It is to be noted that in the Tedrowe case, however, the property alleged to have been fraudulently conveyed, was real estate, and not, as in this case, personal property. See also *McCormicks* v. *Fuller and Williams*, 56 Ia. 43; *South Branch Lumber Co.* v, *Stearns*, 2 Ind. App. 7; 9 Am. and Eng. Ency. of Law, 347, note 1; 11 National Corp. Rep., 392.

In the case at bar, there was evidence tending to show that John H. Spahr had been, for many years, indebted to his wife's father, and that for this indebtedness he had given his promissory notes. There was also evidence tending to show, that on the death of Mrs. Spahr's father, these notes were turned over by the administrator to Mrs. Spahr, in the distribution, as a part of her share in the estate; and that it was in payment of the debt so created that the livery stable was sold to her by her husband, she receiving from him a bill of sale, and at the same time executing to him a written appointment as her agent to carry on the livery stable in her name.

Appellant, however, contends that the evidence merely shows that Mrs. Spahr's father made gifts or advancements to John H. Spahr, with her knowledge and consent; that it was not intended that John H. Spahr's notes, given in acknowledgment of such advancements, should ever be collected, unless her father should at some time, owing to adverse circum-

stances, become in great need of the money; and that the notes were surrendered by the administrator simply that they might be canceled.

It must be admitted that the evidence of good faith in the sale of the livery stable by John H. Spahr to his wife, is not of an altogether satisfactory character; and had the finding of the court, on the evidence adduced, been against the fairness of that transaction, we could not, in the light of the decisions of this court, disturb such finding.

The facts in the case of *Geisendorff* v. *Eagles*, 106 Ind. 38, were, in some respects, much like those in the case at bar. There it was found that Geisendorff, being indebted to his wife in the sum of $11,000.00, money derived from her separate estate, and appropriated by her husband in his own business, and being also insolvent and largely indebted to other persons, gave his wife a bill of sale of a large quantity of ice, and then took from her an appointment as one of her agents, and so continued in possession of the ice and in the carrying on of the ice business. The ice so sold to the wife was seized on execution, issued against the husband. In an action in replevin, brought by the wife to recover the ice from the sheriff, there was judgment for the execution plaintiffs.

The case was twice appealed to this court. On the first appeal, the court said: "The evidence on the trial clearly showed, we think, that * * * the said Jacob C. Geisendorff did sell such ice to his wife, the said Sarah H. Geisendorff, for its fair value, in payment of a debt then justly due and owing by him to her. This sale was made some time before the appellees, or either of them, acquired any interest in or lien upon such ice. It was clearly shown, however, that, after this sale of the property in question, there was

no visible change in the possession thereof." *Geisendorff* v. *Eagles*, 70 Ind. 418.

On the second appeal, the holding was similar: That the indebtedness of the husband to the wife was clearly and satisfactorily established, and that his sale to her of the ice was in payment of this indebtedness. But the court also found that there was evidence tending to impeach the good faith of that sale, particularly that "no visible change of possession followed, and everything relating to the ice continued thereafter apparently as before." Consequently, the sale was held to be in fraud of creditors.

The sale in *Gcisendorff* v. *Eagles, supra,* had fewer badges of fraud than are found in the case before us. In that case, there was no question that the consideration for the sale was good. Here, while the court, in effect, found the consideration good, and while there was evidence given on which such finding might be based; yet, it is strenuously contended, and with much reason, that the evidence of a valid consideration is of an exceedingly unsatisfactory character. Here, moreover, the painstaking legal formalities observed in the execution of the bill of sale and the appointment of the husband as agent, are suspicious circumstances, and as such are recognized badges of fraud. In both cases, the continued possession of the husbands, under their pretended appointment as agents of their wives, is quite similar. See, in addition, *Mitchell* v. *Sawyer,* 115 Ills. 650.

In *Seavey* v. *Walker,* 108 Ind. 78, a bill of sale of a stock of goods was given by one Lew to Seavey and another, in payment of certain valid debts. Lew, however, continued in possession of the goods and of the business connected therewith. The sale was held invalid, as being in fraud of other creditors.

The court, in that case, citing the statute, section

6636, R. S. 1894 (section 4911, R. S. 1881), that "every sale made by a vendor, of goods in his possession or under his control, unless the same be accompanied by immediate delivery, and be followed by an actual change of the possession of the things sold, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or subsequent purchasers in good faith, unless it shall be made to appear that the same was made in good faith and without any intent to defraud such creditors or purchasers,"—held that the continued possession by Lew of the goods and business, after he had given a bill of sale of the same, made a case of presumptive fraud, and that it was incumbent on Seavey to disprove the *prima facie* case of fraudulent sale so made.

In the case at bar, we think also that a *prima facie* case of fraudulent sale by John H. Spahr to his wife was made out, on showing that Spahr continued in full possession and management of the livery stable and business after the giving of the bill of sale to his wife. This would seem evident, whether, as the court found, he afterwards proved the good faith of his sale or not.

This *prima facie* case of fraud having been made out by the appellant, the question arises, whether the court did not err in excluding evidence offered by him of the declaration of Spahr, while in possession of the property, that the sale was made "to beat Higgins."

"The general rule," as said in *Grant* v. *Lewis*, 14 Wis. 528, "is, it is true, that the declarations of a vendor, made after he has parted with his title, are not admissible in evidence to affect the title of the vendee. But an exception to this rule is so far established, that where the vendor remains in the actual possession of the goods, his statements explanatory of such possession and of the relation which he then holds to the property, are admissible as original evidence, and for

the purpose of showing fraud in the sale if they have that tendency."

A like ruling was made in *Hamburg* v. *Wood & Co.*, 66 Tex. 168. There a *prima facie* case of fraudulent sale having been made by showing that the vendor remained in possession after the sale, and notwithstanding the claim made that evidence adduced showed that the sale was in fact made in good faith, the court said: "However reasonable may have been the explanation given in this case, whether it was sufficient to rebut the *prima facie* case made by the plaintiff, was to be passed upon by the jury. In refutation of that explanation, the plaintiff, by establishing a *prima facie* case of fraud, had laid the predicate for proof of the excluded declarations." And the court added: "The claim by both vendor and vendee that the possession by the former is as agent or servant of the latter, does not render the testimony inadmissible." As to effect of vendor's retention of possession after sale, see, further, a valuable note in Benj. Sales, section 675, note D.

Whether the decisions of this court go so far as the cases last cited, in holding that possession after sale by a vendor of personal property establishes a *prima facie* case of fraud, may, perhaps, be questioned; since our statute, *supra*, provides that the good faith of such sales may be established. Our statute, above quoted, does, however, throw upon the vendee of such property the burden of showing the good faith of such transfer of title. Besides, considering the many badges of fraud in the sale here under consideration, together with the unsatisfactory character of the evidence adduced in support of its good faith, we are inclined to think that the court erred in excluding the evidence offered to prove the declarations of John H. Spahr, made while still in possession of the property,

to the effect that the sale was made to prevent the collection of the debt due the appellant. That debt was one of the most sacred recognized by law, being for the purchase-price of the same property sold by appellant to John H. Spahr.

The judgment is reversed, with instructions to grant a new trial.