BANK v. LEVY.

(Filed May 2, 1905.)

*Fraudulent     Sales—Declarations     of     Vendor—Evidence Bankruptcy—Issues.*

1.  Where a debtor sold a stock of goods, his declarations claiming the goods and inconsistent with an absolute sale, made after the date of the sale, but while he remained in actual possession and control of the goods, are competent against the vendee on the question of fraud, in an action against the vendee to recover said goods.

2.  Under the Bankruptcy act of 1898, section 67 (e) declaring void all transfers of property by a bankrupt, etc., "except as to purchasers in good faith and for a present fair consideration," the proper issue is "Did the defendant purchase the goods in good faith for a present fair consideration and without knowledge of the fraud."

ACTION by Piedmont Savings Bank, Trustee in Bankruptcy of N. D. Young & Co., against L. Levy, heard by *Judge O. H. Allen,* and a jury, at the August Term, 1904, of the Superior Court of SURRY County.

This is an action by the plaintiff as trustee in bankruptcy of N. D. Young & Co. against the defendant for the recovery of possession of a stock of goods which the defendant had acquired from the bankrupt a short time prior to the bankruptcy. Upon the trial below the court submitted the fol-

lowing issues: 1. Was the conveyance of the stock of goods from Young & Co. to Levy made with the intent and purpose on their part, or either of them, to hinder, delay or defraud their creditors or any of them? Answer, Yes. 2. Did the defendant purchase in good faith and without knowledge or notice of such fraudulent intent on the part of Young & Co., or either of them? Answer, Yes. 3. Is the plaintiff trustee the owner and entitled to the immediate possession of the property described in the complaint? Answer, ——. 4. What was the value of said stock of merchandise at the time of the seizure by the defendant from said Young & Co.? Answer, ——. 5. Did the defendant unlawfully detain said property from the plaintiff as alleged in the complaint? Answer, ——.

From a judgment for the defendant, the plaintiff appealed.

*Louis M. Swink, Lindsay Patterson* and *Watson, Buxton & Watson.* for the plaintiff.
*Manly & Hendren* for the defendant.

BROWN, J. Upon the trial of this action the plaintiff, for the purpose of proving fraud on the part of the transferrers, N. D. Young & Co., as well as the transferee, the defendant, offered in evidence certain declarations of John A. Stone, which were admitted by the court upon the first issue, but excluded as evidence against the defendant on the second issue. As this was erroneous and necessitates a new trial, we will notice no other exception.

The entire evidence tended to prove that John A. Stone was the owner of the business, goods and merchandise of Young & Co. at Pilot Mountain; that Young "loaned Stone the use of his name" and acted as clerk. It is contended by defendant that this stock of goods, which is the subject of the controversy, was purchased by the defendant from Stone on April 6, 1903. There is no evidence that Young knew anything of such alleged purchase until April 21, 1903.

There is no evidence that the goods were taken possession of by the defendant until after April 21st. The defendant himself testifies that he did not take possession until April 21st when a deputy sheriff levied on the goods under an execution against N. D. Young & Company, but claims that Stone was to hold the goods for the defendant as his bailee. Defendant never notified Young that he claimed the goods or had any interest in them until April 21st. All the evidence shows that the goods were in the actual possession of John A. Stone and his clerk, Young, up to April 21, and that the receipts from sales were paid over to Stone every day by Young and the business conducted just as it had been since its establishment in December, 1902.

The declarations of Stone, claiming the goods and inconsistent with an absolute sale, made to several persons at different times between April 6th and April 21st, are contended by plaintiff to be competent evidence upon the question of fraud as against the defendant upon two grounds: 1st. Because there is evidence tending to prove a conspiracy between Stone and Levy to defraud Stone's creditors; 2nd. Because Stone remained in actual possession and control of the goods until April 21st and there was no change in the conduct of the business until then.

As we think the evidence is clearly competent against the defendant upon the second ground, we will not consider the first. His Honor improperly limited the scope and effect of the evidence offered to the first issue.

It was once considered that when a debtor made an absolute sale of chattels and retained possession and control, the intent to hinder and delay creditors appeared conclusively upon the face of the transaction. "The donor continued in possession and used them as his own, and by reason thereof he traded and trafficked, defrauded and deceived others. It was done in secret, *et dona clandestina sunt semper suspiciosa.*" *Twyne's Case,* Smith's Leading Cases, Vol. 1,

page 1. Since *Twyne's case* this doctrine has been relaxed. It is now competent to allow evidence to be received to repel this inference of fraud, the burden being on the transferree to rebut it. "But," says *Judge Gaston*, "such a repugnance between the transfer and the possession, yet raises the presumption of a secret trust for the benefit of the grantor, which, while it admits, also requires an explanation, and which, unexplained or not satisfactorily explained, establishes the fraud." *Askew v. Reynolds,* 18 N. C., 368. The possession and control of the goods having been retained by the debtor, Stone, up to April 21st, and after his alleged sale to the defendant on April 6th, was sufficient of itself to impress upon the transaction a fraudulent character. It was incumbent upon the defendant to explain the character of that possession. The defendant offered his own evidence tending to remove the legal presumption of fraud and to prove that, without any knowledge upon the part of Young or any one else, the defendant left Stone in possession as defendant's agent and bailee. Was such possession of Stone in fact and truth the possession of a bailee of the purchaser or was it merely colorable and a part of the machinery of fraud? The character of Stone's possession thus became a most material inquiry upon the second issue. This rule of evidence is the same in respect to real and personal property. Wigmore on Evidence, Sec. 1083. The general doctrine, as laid down by all the text writers and innumerable adjudications, is that the declarations of the vendor made after the sale may be given in evidence if the vendor continues to hold possession of the goods. The rule is often stated that the declarations of a party in possession either of real or personal property explanatory of and characterizing his possession constitute a part of the *res gestae* and may properly be allowed in evidence. 9 Am. & Eng. Enc. of Law (2 Ed.), page 12. In the 24th volume of this same work, page 688, many cases are cited to support that proposition, and volume

14, at page 497,- gives cases from almost every State and Federal jurisdiction applying the rule to declarations of a fraudulent vendor remaining in possession as evidence against the vendee. The underlying basic principle of the rule is that the debtor—transferrer's intent being a necessary part of the issue of fraud, all his conduct and declarations while in possession of the property, real or personal, and dealings with it, which indicate his intent are receivable in evidence against him and his transferee, inasmuch as the conduct and utterances of a person are indicative of his knowledge, beliefs, purposes or intent when they are facts in issue. Proof of the fact of continued possession of the vendor is always evidence to impeach the transfer. From this it follows that the conduct and declarations of the possessor are competent as indicating the purpose of and characterizing his possession. They are part of the *res gestae*. *Kirby v. Masten,* 70 N. C., 541.

Mr. Wait, in his work on Fraudulent Conveyances, Sec. 279, (3rd Ed.) formulates the rule as follows: "So long as the debtor remains in possession of property which once belonged to him and which his creditor is seeking to condemn as fraudulently conveyed, the *res gestae* of the fraud, if any, may be considered as in progress, and his declarations, though made after he has parted with the formal paper title, may be given in evidence for the creditor against the claimant, by reason of the continuous possession which accompanied them." To the same effect is Bump on Fraudulent Conveyances (4th. Ed.) Sec. 600. See also *Willis v. Fairley,* 14 E. C. L., 366; *U. S. v. Griswold,* 8 Fed. Rep. 556; *Higgins v. Spahr,* 145 Ind. 167; *Bank v. Beard,* 55 Kan. 773.

In Wait on Fraudulent Conveyances, *supra,* the author, among a large number of cases, cites with approval *Kirby v. Masten, supra, Hilliard v. Phillips,* 81 N. C., 104; *Ward v. Saunders,* 28 N. C., 382; *Wise v. Wheeler,* Id. 196, and

BANK *v.* LEVY.

other North Carolina cases, as sustaining this rule of evidence.

In *Askew v. Reynolds, supra,* which is a case on all fours with this, *Judge Gaston,* after stating that the possession of the slaves having been retained by the debtor after the execution of his bill of sale was sufficient to impress upon the transaction the character of a fraudulent transfer, unless from other facts and circumstances another character could clearly be assigned to it, decides that the declarations of the grantor, as evidence against the grantee upon the question of fraud, were competent and should have been received in evidence. This learned and accomplished jurist says: "Generally the acts or declarations of a grantor, after the conveyance made, are not to be received to impeach his grant. The rights of the grantee ought not to be prejudiced by the conduct of one who at the time is a stranger to him and to the subject matter of those rights. But the acts and declarations rejected in this case were those of the possessor of the property—were connected with that possession, and formed a part of its attendant circumstances. They were collateral indications of the nature, extent, and purposes of that possession. They were to be admitted, not because of any credit due to him by whom they were done or uttered, but because they qualified and characterized, or tended to qualify and characterize, the very fact to be investigated."

Professor Wigmore, in his elaborate treatise on Evidence, Sec. 1086, page 1300, quotes the larger part of *Judge Gaston's* opinion and says: "This theory can hardly be impugned in its logic. Reduced to a rule, it admits the declarations when made during possession whether or not the debtor is a party to the cause."

We have not only the high authority of *Judge Gaston* in support of our view, but we have the equally high authority of *Chief Justice Ruffin,* who says, in *Foster v. Woodfin,* 33 N. C., 339, after fully endorsing the opinion of *Judge Gas-*

*ton:* "Where a man has conveyed a personal chattel, but still retains the possession, his acts and declarations, even subsequent to such conveyance, while he remains in possession, are evidence against the vendee or grantee on a question of fraud." In *Marsh v. Hampton*, 50 N. C., 383, it is decided that, where a party who is charged with making a fraudulent conveyance remains in possession of the property after the date of the conveyance, what he said about the nature of his possession is competent evidence to impeach the conveyance on the ground of fraud. That was an action of trover to recover a slave. In his opinion *Judge Battle* cites with approval the opinions of *Chief Justice Ruffin* and *Judge Gaston,* and says: "The principle of the decision is that the declarations of a party in possession are admissible to prove the character of the possession, as to whether he holds it for himself or for another, and in that view it is competent after a conveyance by the former owner if he be permitted still to retain the possession."

There are a number of other cases in our own reports which, with striking uniformity, sustain the view we have here presented. It would be a work of supererogation to add anything more to the weight of authority which we have invoked.

As there was much debate as to the competency and scope of the evidence offered, we have gone into the question more fully than we otherwise would.

Inasmuch as this case is to be tried again, we will call attention to the second issue, which in form is not determinative of the real facts at issue, because it omits entirely the necessary ingredient of a fair price. The Bankruptcy Act of 1898, Section 67 (e), declares void all transfers of property by a bankrupt, etc., "except as to purchasers in good faith and for a present fair consideration." In view of this law, the proper issue, in lieu of the second one submitted by

the Court, would be as follows: "Did the defendant purchase the goods in good faith, for a present fair consideration, and without knowledge of the fraud?"

New Trial.